IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02231-RM-MEH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NEW WORLD RENEWABLE ENERGY LEASING, INC.;
INFINERGY SOLAR & WIND, INC.; and
MURRAY HAMBRICK,

    Defendants.

**SUPPLEMENTAL BRIEFING REGARDING DAMAGES FOR ENTRY OF DEFAULT JUDGMENT PURSUANT TO MARCH 9, 2018, MINUTE ORDER**

The United States respectfully submits this supplemental brief in support of its Motion for Entry of Default Judgment (Doc. 51) as requested by the Court's March 9, 2018 Order (Doc. 57) ("Order"). In the Order, the Court asks for the United States' legal support for measuring its damages as the full amount of the cash award to New World Renewable Energy Leasing, Inc. ("New World"), and further asks for the United States to set forth the actual cost basis incurred by "Defendants."[1]

---

[1] The United States's Motion for Entry of Default Judgment (Doc. 51) seeks to have the Court enter judgment only against the Corporate Defendants, New World Renewable Energy Leasing, Inc. and Infinergy Solar and Wind, Inc.

1

The United States is entitled to the full amount paid as damages in this False Claims Act ("FCA") lawsuit for several reasons. First, the well-established law is that for a government-funded initiative, such as the 1603 Program, the proper measurement of the damages in an FCA case is the full amount of the subsidy. Second, even if the law allowed a fraudulent actor to get the benefit of an offset for its actual cost basis, the 1603 Program applicant in this case—New World—has a $0 cost basis in the projects at issue here. Third, while Infinergy Solar and Wind, Inc. ("Infinergy") may have incurred some costs,[2] Infinergy was not the 1603 Program applicant and is not the owner of the solar power properties. As such, Infinergy would not meet the program requirements to both own the properties and hold them for the generation of income for five years.

For these reasons, Plaintiff United States is entitled to measure its single damages amount (which is trebled under the False Claims Act) as the full amounts paid on New World's 41 applications to the 1603 Program.

**I.    Because the United States Did Not Receive a Tangible Benefit from 1603 Program Cash Payments, the Measure of Damages is the Full Amount Paid.**

This FCA case does not involve payments in exchange for goods or services delivered to the United States. Instead, it involves a program related to the private development of renewable energy for non-government use, which was part of the American Recovery and Reinvestment Act of 2009, often called the "stimulus package." (Complaint at 9).

---

[2] As discussed below, Infinergy has been unable or unwilling to provide the United States with sufficient documentation of the costs incurred in these projects.

When a government program that is defrauded provides only an indirect or intangible benefit to the United States (as contrasted to direct, contractual benefits, such as providing IT services to a federal agency or constructing a building for the government's use), the defendant is not entitled to an offset to damages for the "value" of the product the government received. Instead, the measure of damages is the entire amount paid to the fraudulent actor. *U.S. ex rel. Longhi v. Lithium Power Technologies, Inc.*, 575 F.3d 458, 473 (5th Cir. 2009) ("In a case such as this, where there is no tangible benefit to the government and the intangible benefit is impossible to calculate, it is appropriate to value damages in the amount the government actually paid to the Defendants."). In *Longhi*, the defendants received research grants for lithium battery development based on fraudulent misrepresentations, and ultimately developed a usable product that the government "found to be satisfactory." *Id.* at 472. The court, however, distinguished this research grant from a "standard procurement contract[] where the government ordered a specific product or good. The end product did not belong to the [government]." *Id.* at 473. In such cases, where the benefit to the government is intangible, the Fifth Circuit held that the measure of damages in the False Claims Act context was the "entire amount the Defendants' received . . . ." *Id.*

A number of other circuits have adopted this approach, and the United States is not aware of any court that has rejected it. *See U.S. ex rel. Feldman v. van Gorp*, 697 F.3d 78, 88 (2d Cir. 2012) (finding that where the United States received no tangible benefit, "the government is therefore entitled to damages equal to the full amount of grants awarded to the defendants based on their false statements"); *United States v. Rogan*, 517 F.3d 449, 453 (7th Cir. 2008); *United*

*States v. Mackby*, 339 F.3d 1013, 1018-19 (9th Cir. 2003); *Longhi,* 575 F.3d at 473. "[W]here the defendant fraudulently sought payments for participating in programs designed to benefit third-parties rather than the government itself, the government can easily establish that it received nothing of value from the defendant and that all payments made are therefore recoverable as damages." *United States v. Science Applications Intern. Corp.*, 626 F.3d 1257, 1279 (D.C. Cir. 2010) ("*SAIC*").

This case fits squarely within the *Longhi* line of cases. Here, the 1603 Program provided a payment to incentivize private businesses to place into service clean energy projects. The energy projects must be held by the applicant in its trade or business or used for the production of income. *See* P.L. 111-5 § 1603(a) and (d). The energy projects are not for the use of the United States. In this case, New World owned the solar power properties at issue, received state renewable energy tax credits on those solar power properties, and was also entitled to receive lease payments from homeowners. New World not only received Treasury money to which it was not entitled, it also received and still retains the value of the solar power properties it developed based on its fraud. New World's expenditures had no direct and tangible value to the government, but instead, resulted in a benefit to New World itself. *See SAIC*, 626 F.3d at 1279 (benefit-of-the-bargain framework of damages seeks to determine the *value* to the government, not the amount of money expended by the defendant).

There are also strong policy reasons not to allow a defendant who defrauds the government to get an offset for amounts it might have received had it been an honest actor that did not engage in deceit. *See Rogan*, 517 F.3d at 453 (considering alternatives where money

4

might have legitimately been paid, but finding that "neither possibility allows [the defendant] to keep money obtained from the Treasury by false pretenses, or avoid the penalty for deceit").

In sum, because the 1603 Program did not result in any tangible benefit to Treasury, the United States is entitled to the full amount paid on New World's 1603 applications regardless of whether New World incurred any costs.

## II. New World Incurred No Costs in Acquiring the 1603 Solar Power Properties.

Even if an offset for actual costs was authorized by law, New World did not incur any such costs. 1603 Program reimbursement is only available to applicants who own the energy properties and who use those properties in a trade or business or to generate income for five years. (Complaint, ¶¶ 70, 77). The ownership in the solar power properties at issue here was transferred to New World, and New World then purported to have executed leases with the homeowners where the solar systems were located. (Complaint, ¶¶ 16, 71). New World then submitted 1603 applications for payment to Treasury for those solar power properties.

New World, however, did not incur *any* costs for these solar power properties. The "invoice" and "cost breakdown" documents were fabricated (Complaint, ¶¶ 42, 57) and New World incurred no obligation. (Complaint, ¶¶ 59-63). New World's actual incurred cost was zero dollars.

Accordingly, the total amount by which New World overstated its cost basis is the full amount of the "claimed cost basis" column in the spreadsheet attached to Ellen Neubauer's Declaration. (Doc. 51-1).

### III. Any Costs Infinergy May Have Incurred are Irrelevant to the Eligible Cost Basis in this Case.

Through the scam orchestrated by Defendants, Infinergy neither owned the solar power properties nor held them for the production of income for five years. Infinergy was not, and could not have been, the 1603 Program applicant.[3] Accordingly, any costs Infinergy may have incurred[4] are not part of the "eligible cost basis" and cannot be used as a damages offset, even putting aside the *Longhi* line of cases discussed above.

### CONCLUSION

Because the defrauded program provides only indirect and intangible benefits to the United States, there is no legal support for a damages offset for any actual costs the defendants may have incurred. Further, New World, the 1603 applicant eligible for the program, did not incur any cost basis. Even if Infinergy incurred some costs, it does not meet the qualifications of the 1603 Program and, in any event, has not been able to competently document these costs.

---

[3] As discussed more fully in the Motion for Entry of Default Judgment, although Infinergy was not the 1603 applicant, Infinergy is liable under the sections (a)(1)(A) and (a)(1)(B) of FCA because it, at a minimum, took "affirmative acts" that "cause[d] or assist[ed] the presentation of the false claim." (Doc. 51 at 11, citing *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 714-15 (10th Cir. 2006)). Infinergy's conduct in the scam also meets the requirements for a conspiracy claim under section (a)(1)(C) of the FCA (Doc. 51, at 12-13).

[4] The United States made efforts to determine how much money Infinergy spent on these solar systems during its pre-complaint investigation, including through the issuance of Civil Investigative Demands. (Complaint, ¶ 64). Infinergy produced scant and incomplete evidence of its costs during the United States' investigation. Furthermore, the evidence strongly suggests that Infinergy did not incur significant costs. Mr. Hambrick testified that Infinergy did not pay its costs upfront, Infinergy dealers indicated that they were sometimes not paid (including one dealer who sued Hambrick for non-payment), and the United States is aware of three lawsuits for non-payment by solar-power component companies against Infinergy, among others.

The United States requests that the Court enter default judgment against the Corporate Defendants in the amount of $4,829,967 in damages and $225,500 in civil penalties.

Dated March 16, 2018.

Respectfully submitted,

ROBERT C. TROYER
United States Attorney

*s/ Zeyen J. Wu*
Zeyen J. Wu
Assistant United States Attorney
1801 California St., Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0404
Email: zeyen.wu@usdoj.gov

*s/ Andrea Wang*
Andrea Wang
Assistant United States Attorney
1801 California St., Suite 1600
Denver, CO 80202
Telephone: 303-454-0100
Email: andrea.wang@usdoj.gov

Attorneys for Plaintiff
United States of America

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2018, I mailed a copy of the foregoing via U.S. Mail and email to:

Murray Hambrick, individually and as registered agent for
New World Renewable Leasing, Inc. and
Infinergy Wind and Solar, Inc.
2503 Humble Ave
Midland, Texas 79705
murrayhambrick@aol.com

                                              *s/ Zeyen J. Wu*
                                              Zeyen J. Wu
                                              United States Attorney's Office