IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02231-MEH

UNITED STATES OF AMERICA,

    Plaintiff,

v.

NEW WORLD RENEWABLE ENERGY LEASING, INC.,
INFINERGY SOLAR & WIND, INC., and
MURRAY HAMBRICK,

    Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff United States of America moves for default judgment against Defendants New World Renewable Energy Leasing, Inc. and Infinergy Solar and Wind, Inc. (collectively "Corporate Defendants"). Because the United States' Complaint establishes violations of the False Claims Act, the Court recommends entering default judgment against Corporate Defendants. The United States is entitled to $4,829,967.00 in damages plus a civil penalty of $225,500.00. Accordingly, the Court respectfully recommends that the District Court grant the United States' Motion for Entry of Default Judgment Pursuant to Fed. R. Civ. P. 55(b)(2).

## **FINDINGS OF FACT**

1. Congress enacted Section 1603 of the American Recovery and Reinvestment Act of 2009 ("1603 Program") to offer cash payments in lieu of tax credit for qualified investments in energy properties.

2. Pursuant to the 1603 Program, an eligible applicant placing "specified energy property" into

service is entitled to a cash payment from the United States Treasury ("Treasury") equal to a percentage of the eligible cost basis of the property.

3. Under 1603 Program rules, an entity or individual can purchase an energy property at a markup and claim the purchase price as its cost basis. However, the purchase must be a legitimate transaction.

4. Defendant Murray Hambrick used New World and Infinergy to increase the amount of 1603 Program payments he received.[1]

5. Infinergy partnered with "dealers," who would sell and install solar panels to residential and commercial customers. After a dealer installed the solar panels, it would submit invoices related to the project to Infinergy. Occasionally, Infinergy would complete the invoice.

6. The dealers did not expect payment of the entire invoiced amount. In fact, some dealers have stated that the amounts in the invoices did not match the real costs of the solar power system. Additionally, Mr. Hambrick would sometimes tell the dealers that the amounts were too low and needed to be increased.

7. Infinergy would then submit the invoice to New World—a company owned and operated by Mr. Hambrick—to represent a sale of the property. Mr. Hambrick or New World's Director of Regulatory Affairs would input the invoiced amount into a cost breakdown document.

8. However, New World did not pay or incur any of the amounts it claimed in the cost breakdown document, and Infinergy and the dealers did not expect payment of the invoices.

---

[1] Because the Clerk of the Court has not entered default as to Defendant Murray Hambrick, the findings of fact related to him are made solely for the purpose of determining whether default judgment is proper against Corporate Defendants. These findings are not conclusive as to Mr. Hambrick.

On occasion, even Infinergy failed to pay its dealers for the materials and installation of the solar power properties.

9. Nevertheless, New World submitted the invoices and cost breakdown documents to Treasury as part of its applications for 1603 Program benefits.

10. To represent that New World's claimed cost bases were legitimate, Mr. Hambrick informed Treasury that New World submitted bids for the properties. In fact, New World did not bid for any of the properties underlying its 1603 Program applications.

11. New World and Infinergy knew they were entitled to submit only actual costs incurred as part of 1603 Program applications. New World's computer files contain highlighted guidance from Treasury stating that the costs submitted must reflect actual costs. Additionally, Ellen Neubauer—the Director of the Office of Housing and Energy for Treasury—sent an email to Mr. Hambrick stating that the claimed costs must actually be incurred.

12. In response to Ms. Neubauer's email, Mr. Hambrick explained that New World's high cost basis was justified by the fact that New World executed a non-recourse note for each property that resulted in higher risk in the event of default. However, Mr. Hambrick later admitted in testimony that the parties never actually created or executed non-recourse notes.

13. 1603 Program rules also require that the renewable energy property be used in a business or for the production of income. Thus, an applicant who installs solar panels on residential properties must retain ownership and produce income from the panels.

14. To satisfy this requirement, New World executed leases on the properties underlying its 1603 program application. Pursuant to the leases, New World purportedly leased the

equipment to the homeowner or sold the generated power back to the homeowner. However, New World failed to collect payments on many of the leases, and Mr. Hambrick admitted that he was not concerned with the payments. Nevertheless, Mr. Hambrick continued to certify 1603 Program eligibility on annual reports for each solar power property.

15. New World has received $1,609,989.00 for forty-one separate 1603 Program projects.

## PROCEDURAL HISTORY

Based on the preceding facts, the United States filed its Complaint on September 14, 2017. Compl., ECF No. 1. After receiving multiple extensions of time, Mr. Hambrick responded to the Complaint on February 12, 2017. Answer, ECF No. 55. However, Corporate Defendants did not file an answer or other response. Accordingly, the Clerk of the Court entered default as to them on January 23, 2018. ECF No. 38.

On February 8, 2018, the United States filed the present Motion for Entry of Default Judgment, ECF No. 51. The United States seeks judgment against Corporate Defendants on its first, second, and fourth claims for relief, which it brings pursuant to the False Claims Act. *Id.* at 13. The United States requests damages equal to three times the amount it paid New World and a civil penalty of $225,500.00. *Id.* at 13–14. Corporate Defendants did not respond to the United States' motion.

On March 9, 2018, the Court requested that the United States file a supplemental brief explaining whether its damages are equal to the full amount of 1603 Program payments or the amount by which New World overstated its cost basis. ECF No. 57. In its supplemental brief, the United States asserts it is entitled to the full amount of 1603 Program payments, because it did not receive a tangible benefit from the 1603 Program. Supplemental Brief 2–5, ECF No. 60.

4

Regardless, the United States claims New World has no cost basis in the properties and any costs Infinergy incurred are irrelevant, because Infinergy did not own the properties. *Id.* at 5–6.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 55 governs entry of default and motions for default judgment. If a party fails to answer or otherwise defend a case, the clerk of the court may enter default pursuant to Rule 55(a). Fed. R. Civ. P. 55(a). After entry of default, a party cannot defend a claim on the merits. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("[D]efendant, by his default, admits the plaintiff's well-pleaded allegations of fact." (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 524 (5th Cir. 2002) (finding that "[a] default judgment is unassailable on the merits."))); *Adriana Int'l Corp. v. Thoeren,* 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

After entry of default in a claim that is not for a sum certain, the plaintiff may apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). In analyzing a motion for default judgment, the court must consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos*, No. 05-cv-00846-RPM-BNB, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (citing *Black v. Lane,* 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining the unchallenged facts, the well-pleaded allegations in the complaint are deemed true. *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983); *Malibu Media, LLC v. Ling*, 80 F Supp. 3d 1231, 1239 (D. Colo. 2015) ("In determining whether a claim for relief has been established, the well-pleaded facts of the complaint relating to liability are deemed true."). Additionally, the court accepts the undisputed facts set forth in affidavits and exhibits. *Deery Am. Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo.

Feb. 6, 2007).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of S. Conn., L.P. v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. N.Y. State Dep't of Civil Servs.*, 168 F.3d 610, 615 (2d Cir. 1999)). Trial courts are vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy,* 825 F.2d 1463, 1468 (10th Cir. 1987); *Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) ("[U]pon a default, a plaintiff is entitled to a determination of liability unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof.").

## **ANALYSIS**

The Court recommends finding that the United States is entitled to default judgment pursuant to Fed. R. Civ. P. 55(b)(2). The Court will first consider its subject matter jurisdiction to decide the merits of this case and whether Corporate Defendants have submitted to the personal jurisdiction of this Court. Then, the Court will analyze whether the United States' Complaint and the evidence the United States has submitted demonstrate violations of the False Claims Act. Finally, the Court will discuss the damages to which the United States is entitled.

**I.  Subject Matter and Personal Jurisdiction**

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction. *See, e.g.*, *Williams v. Life Sav. & Loan,* 802 F.2d 1200, 1202–03 (10th Cir. 1986) (stating that lack of subject matter jurisdiction constitutes good cause to set aside a default judgment), *superseded by statute on other grounds*; *see also Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.,* 115 F.3d 767, 772 (10th Cir. 1997) (finding that the district court

erred in failing to determine personal jurisdiction before considering entry of default judgment). The Court recommends finding that the District Court has subject matter jurisdiction over this case and personal jurisdiction over Corporate Defendants.

Regarding subject matter jurisdiction, the United States is a plaintiff and the claims arise under a federal statute—the False Claims Act. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. § 1345 ("[T]he district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States . . . .").

To determine whether the Court has personal jurisdiction over Corporate Defendants, the Court must conduct a two-step analysis. First, courts examine "whether the non-resident defendant has 'minimum contacts' with the forum state such 'that he should reasonably anticipate being haled into court there.'" *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.,* 488 F.3d 1282, 1287 (10th Cir. 2007). The "minimum contacts" test may be met by establishing either general or specific jurisdiction. If a defendant has "continuous and systematic" contacts with the forum state, he may be subjected to the general jurisdiction of the state's courts. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984); *Shrader v. Biddinger*, 633 F.3d 1235, 1247 (10th Cir. 2011) ("[S]poradic or isolated visits to the forum state will not subject the defendant to general jurisdiction."). In the absence of "continuous and systematic" contacts, courts may exercise specific jurisdiction when a defendant "purposefully directed" his activities at the state's residents, and the cause of action arises out of those activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985); *Benton v. Cameco Corp.*, 375 F.3d 1070, 1076 (10th Cir. 2004) ("A defendant's contacts are sufficient if the defendant purposefully directed its activities at residents of the forum, and the

7

plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state.").

If the plaintiff establishes minimum contacts, courts must analyze whether exercising personal jurisdiction is reasonable in light of the circumstances surrounding the case. *See, e.g.*, *ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011). In assessing reasonableness, courts consider: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.*

The Court possesses specific personal jurisdiction over Corporate Defendants. First, Corporate Defendants have minimum contacts with Colorado. Importantly, six of the solar power properties that Corporate Defendants submitted to Treasury for reimbursement are located in Colorado. Compl. ¶ 3, ECF No. 1; ECF No. 1-1. Additionally, Infinergy purchased equipment for some of the solar power properties from a Colorado-based company and it held a meeting with its dealers in Colorado. Compl. ¶ 3. New World had interactions with Colorado real-property owners, and it dealt with a Colorado utility company to connect the properties to the local electrical grid. *Id.* ¶¶ 3, 37. Furthermore, New World made many of the misrepresentations underlying this lawsuit to officials at the National Renewable Energy Laboratory, which is located in Golden, Colorado. *Id.* ¶¶ 3, 52–53, 61. Accordingly, Corporate Defendants have purposefully directed their solar power activities at the State of Colorado, and the claims in this case arise out of those actions.

Second, exercising jurisdiction over Corporate Defendants is reasonable in light of the circumstances. Because Corporate Defendants have conducted business across the country,

including in Colorado, ECF No. 1-1, the Court does not find that being subject to suit in Colorado is prohibitively burdensome on Corporate Defendants. Second, Colorado has an interest in resolving this dispute, because many of the solar projects underlying this lawsuit are located in Colorado. *Id.* Regarding the third factor—the United States' interest in the efficient resolution of this case—many of the individuals with knowledge of the United States' claims are in Colorado. Indeed, the federal agency that reviewed New World's 1603 Program applications is located in Colorado. Similarly, because Colorado is an efficient forum to resolve this dispute, the fourth and fifth factors favor exercising jurisdiction over Corporate Defendants in Colorado. Accordingly, the United States has sufficiently demonstrated that Corporate Defendants are subject to jurisdiction in Colorado.

In sum, the Court recommends finding the District Court has subject matter jurisdiction over this case and personal jurisdiction over Corporate Defendants. The Court must next analyze whether the well-pleaded facts demonstrate violations of the False Claims Act.

## II. Violations of the False Claims Act

The United States asserts three claims against Corporate Defendants under the False Claims Act: (1) a violation of 31 U.S.C. § 3729(a)(1)(A), (2) a violation of 31 U.S.C. § 3729(a)(1)(B), and (3) a violation of 31 U.S.C. § 3729(a)(1)(C). Compl. ¶¶ 82–103, 111–20, ECF No. 1. Section 3729(a)(1)(A) prohibits any person from knowingly presenting, or causing to be presented, a false or fraudulent claim for payment to the United States. Similarly, § 3729(a)(1)(B) prohibits individuals or entities from knowingly making, using, or causing to be made or used, a false record or statement material to a false or fraudulent claim for payment to the United States. Lastly, § 3729(a)(1)(C) prohibits conspiracies to commit violations of §§ 3729(a)(1)(A) and 3729(a)(1)(B).

The United States has established a violation of each of these provisions. Regarding §

3729(a)(1)(A), New World submitted cost bases to Treasury that it did not actually possess. Compl. ¶ 42 ("The Infinergy dealers did not expect payment of the amount in the Invoices."). Indeed, one dealer stated New World regularly asked him to submit invoices that did not match the real costs of the solar panel system. *Id.* ¶ 57. Another dealer stated that New World and Infinergy often failed to pay anything for the installation of the solar panels despite New World's representation to Treasury that it actually incurred those costs. *Id.* ¶ 58. Furthermore, Infinergy took affirmative action to assist New World in making its false claims. *See United States ex. rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 715 (10th Cir. 2006) (stating that a party who takes affirmative action toward causing the presentation of a false claim may be liable under § 3729(a)(1)). Infinergy, working through Mr. Hambrick, arranged the solar panel projects and submitted (or directed its dealers to submit) the false invoices to New World. Compl. ¶¶ 35, 38–40. Therefore, Infinergy "assisted [New World] is continuing to submit the allegedly false claims." *Sikkenga*, 472 F.3d at 715.

Additionally, Corporate Defendants knew the cost bases New World submitted were false. New World's computer files contained highlighted guidance from Treasury stating that the costs submitted must reflect actual costs. Compl. ¶ 49. In response to Treasury's inquiries regarding the costs New World submitted, Mr. Hambrick falsely stated that New World bided for the solar power properties. *Id.* ¶ 56. Additionally, Mr. Hambrick explained that New World's high cost basis was justified by the fact that it executed a non-recourse note for each property, which resulted in higher risk in the event of default. *Id.* ¶ 60. However, Mr. Hambrick later admitted that the parties never actually created or executed non-recourse notes. *Id.* ¶ 63. Because Mr. Hambrick is an owner and director of Infinergy and New World, the Court finds this sufficient to demonstrate knowledge on

behalf of Corporate Defendants. *See id.* ¶ 7. Accordingly, the United States has established a violation of § 3729(a)(1)(A).

Regarding the second claim, § 3729(a)(1)(B) requires the additional element that the false statement be material to a false claim. The statements New World made in its 1603 Program applications were material to Treasury's decision to pay New World cash benefits. Indeed, according to Ms. Neubauer—Treasury's Director of the Office of Housing and Energy—"Treasury would not have paid New World had it known that New World was submitting costs that it did not incur, and had no intention of honoring." Decl. of Ellen Neubauer ¶ 5, ECF No. 51-1. Furthermore, 1603 Program rules permit entities to claim a purchase price as cost basis only when the purchase is a legitimate transaction. Compl. ¶ 27. Because New World never paid the purchase price, the forty-one transactions underlying this case were not legitimate. Therefore, the United States has demonstrated a violation of § 3729(a)(1)(B).

Lastly, the United States establishes a conspiracy claim pursuant to § 3729(a)(1)(C). That Section requires the United States to show that Corporate Defendants agreed to defraud the Government. *Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 672 (2008), *superseded by statute on other grounds*. In other words, Corporate Defendants must have "the purpose of 'getting' the false record or statement to bring about the Government's payment of a false or fraudulent claim." *Id.* at 672–73. Here, Corporate Defendants, through the direction of Mr. Hambrick, agreed that Infinergy would artificially sell solar energy projects to New World for an inflated amount so that New World could obtain larger 1603 Program benefits than it otherwise would have received. Compl. ¶¶ 28–43. The Court finds this sufficient to demonstrate that Corporate Defendants, acting through Mr. Hambrick, worked together to defraud the United States

through making false claims. As such, Corporate Defendants have violated § 3729(a)(1)(C).

## III. Damages

The United States is entitled to damages equal to three times the full amount of cash payments ($4,829,967.00) and $225,500.00 in civil penalties. Mot. for Default Judgment 14, ECF No. 51. In its supplemental brief, the United States contends it is entitled to the full amount of cash payments regardless of whether New World has some cost basis in the renewable energy properties, because it did not receive a benefit from the 1603 Program. *Id.* at 2–5. However, the Court need not determine this issue, because Corporate Defendants do not contest the United States' allegation that New World does not have a cost basis in each property. *See* Compl. ¶ 59, ECF No. 1 ("New World has been unable to show that it paid *any* of the inflated costs reflected on the 'Cost Breakdown' and 'Invoice' documents . . . .").[2] Since New World has no cost basis, it did not qualify

---

[2] Although the Court need not presently determine this issue, many courts have held, even when the United States did not receive a benefit, that the party submitting a false claim is entitled to an offset for the amount that would have been paid if the claims had been truthful. *See United States v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003) ("Ordinarily the measure of the government's damages [under the FCA] would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful." (quoting *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966))); *Coleman v. Hernandez*, 490 F. Supp. 2d 278, 282 (D. Conn. 2007) (rejecting the argument that the Government was entitled to the full amount of Section 8 housing payments, because the Government would not have paid anything if it knew the claims were false). Indeed, in *United States v. Ehrlich*, the court found that damages for a false construction subsidies claim were equal to the amount by which the defendant overstated its costs. 643 F.2d 634, 638–39 (9th Cir. 1981). According to the court, "[t]he damage calculation begins . . . with a determination of the amount by which [the defendant] falsely overstated those costs." *Id.* at 638. To be sure, courts have stated that "where the Government has not received assets with an ascertainable value . . . the proper measure of damages . . . is the full amount of the grant or amount received by the defendant." *United States v. Karron*, 750 F. Supp. 2d 480, 491 (S.D.N.Y. 2011). However, in that case, and the cases the United States cites in its supplemental brief, the false statements went to the facts underlying the defendant's entitlement to benefits, not solely the amount of the benefits; thus, the false statements disqualified the defendant from receiving benefits. *See id.* at 484 (stating that the defendant failed to comply with representations it had made in the

for any cash payments pursuant to the 1603 Program. Therefore, the United States' damages are equal to the full amount of cash payments it made to New World.

The United States paid New World $1,609,989.00 pursuant to the 1603 Program. Decl. of Ellen Neubauer ¶ 4, ECF No. 51-1. Under 31 U.S.C. § 3729(a)(1), the United States is entitled to three times this amount ($4,829,967.00). Additionally, the United States requests a civil penalty of $5,500 for each of the forty-one separate applications ($225,500.00 in total). Pursuant to § 3729(a)(1), the United States is entitled to this penalty. Accordingly, the Court recommends that the District Court enter judgment in favor of the United States for a total of $5,055,467.00.

## **CONCLUSION**

In sum, the Court recommends finding that the United States is entitled to default judgment against Corporate Defendants on its first, second, and fourth causes of action. Because New World did not incur any of the amounts it claimed pursuant to the 1603 Program, the United States is entitled to three times the payments it made ($4,829,967.00) plus a civil penalty of $225,500.00. Accordingly, the Court respectfully recommends that the United States' Motion for Entry of Default Judgment Pursuant to Fed. R. Civ. P. 55(b)(2) [filed February 2, 2018; ECF No. 51] be **granted.**[3]

---

application); *United States ex rel Longhi v. Lithium Power Techs., Inc.*, 575 F.3d 458, 462–63 (5th Cir. 2009) ("Defendants engaged in an elaborate pattern of false statements to secure research grants from the federal government."). Here, the United States contends only that Corporate Defendants overstated the costs of the projects, not that the projects did not qualify for 1603 Program payments. However, because New World did not pay anything for the renewable energy properties, the Court need not definitively determine this issue.

[3] Be advised that all parties shall have fourteen days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations

Dated at Denver, Colorado, this 20th day of March, 2018.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676–83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kan. Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).